EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL PACHECO, acusado y apelante.

Núm. 8860.—*Sometido:* Noviembre 14, 1941. *Resuelto:* Noviembre 25, 1941.

*E. Acosta Domenech,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El Fiscal del Distrito de San Juan formuló acusación contra Miguel Pacheco, imputándole un delito de portar armas prohibidas porque en Río Piedras, el 14 de octubre 1940, ilegal, voluntaria y maliciosamente llevaba sobre su persona con fines de ofensa y defensa, un cuchillo, arma con la cual podía causarse daño corporal.

Compareció el acusado al acto del juicio asistido de abogado. Se le leyó la acusación y ambas partes estipularon someter el caso por la misma prueba practicada en otro de *felony* en el mismo día, y la corte, basándose en dicha prueba, declaró al acusado culpable del delito de portar armas que se le imputaba y lo condenó a dos meses de cárcel sin costas.

No conforme, apeló. Señala tres errores como cometidos por la corte al dictar una sentencia que no se ajusta a derecho ni está sostenida por la prueba, al condenarlo en contra del veredicto del jurado en el caso de *felony* y al actuar movida por pasión y prejuicio.

Examinemos el primer error. La prueba de cargo en el caso de atentado a la vida seguido contra el mismo acusado con la cual se sometió éste de portación de arma prohibida, comienza por la declaración del médico cirujano Dr. Fernando Asencio que atendió a José Alvarez. Expresa que tenía dos heridas, una punzante en el lado izquierdo del vientre y otra también punzante en el espacio intercostal que penetró los tejidos del pulmón, que pudieron producirse "por un punzón, o un puñal o un arma blanca de poca hoja."

Llamado seguidamente Alvarez declaró que el 14 de octubre 1940 "subía con unos encargos . . . y unos cuantos me ponían nombres . . . Miguel Pacheco cogió un guineo y me lo metió por la boca . . . y después me tiró un puazo por aquí (señalando) y otro por aquí (señalando) y unos muchachos me llevaron al hospital." Pacheco "tenía el cuchillo en la mano." Le tiró "con el puñal dos veces, una por el vientre y otra por el costillal." Dijo que era "casi ciego

de nacimiento, por un ojo no veo y por el otro un chispito'' y que se ocupaba ''de vender mi recado para no pedirle un centavo a nadie.'' Aseguró que conocía al acusado y a repreguntas del abogado de éste sobre si lo conoció porque lo oía hablar, respondió, ''Sí, por el habla, y porque tenía la púa en las manos y me apretó por el cuello cuando el guineo.''

Claudina Alvarez dijo: ''Yo lo que vi fué que Celín lo detuvo (a Alvarez) y se empujaron los dos y el Sr. Pacheco le cayó encima y se emburujaron los tres y el señor Pacheco lo cortó'', no sabe con qué.

Pablo Batista explica cómo ''el ciego'', Alvarez, fué provocado por unos muchachos y cómo intervino el acusado diciéndole, ''Toma, ciego, come guineo y el ciego lo botó porque estaba con coraje y entonces Celín (un muchacho que andaba con el acusado) le quitó las piedras de las manos y se emburujaron a pelear Celín y el ciego y como Celín estaba borracho se caía y Miguel Pacheco estaba más arriba y entró con ellos a la lucha y . . . el ciego salió con dos heridas.'' No vió armas en manos de ninguno.

Angela Nieves vió a José Alvarez ''que venía de una tienda con unos encarguitos'' y a Celín y a Pacheco que ''estaban borrachos y le ponían nombres a José Alvarez, y Pacheco le decía: 'Toma, Canela, come guineo.' Celín estaba más borracho y José Alvarez se dobló a coger dos piedras para tirarles y el señor Celín lo aguantó y como estaba muy borracho se vino al piso y entonces el señor Pacheco brincó y lo cortó por el estómago.'' Se le preguntó: ''¿Cómo era el arma?'' y contestó: ''Un cuchillo tendría que ser.'' Se pidió la eliminación de la contestación y fué decretada y entonces respondió al juez que no vió el arma.

Roberto Díaz presenció la escena del guineo y luego la pelea pero no sabe quién hirió a Alvarez.

Juan Cintrón vió a Pacheco con otro compañero, en estado de embriaguez, ''y el ciego llevaba un paquete en las manos

y Pacheco le dijo: 'come guineo' y el señor Pacheco tenía una cuchilla en las manos y el otro agarró al ciego . . . y el ciego se cayó al suelo y al caerse agarró una piedra . . . y vino el señor Pacheco y le tiró y lo cortó por aquí en el estómago y en la espalda."

La defensa le preguntó por el arma y contestó, "Él tenía una cuchilla. P. ¿Cuchillo o cuchilla? R. Es lo mismo."

La prueba de la defensa consistió en la declaración del testigo Cesáreo Suárez y en la del acusado.

El testigo declaró:

"Resulta que para ese día en la calle Palma esquina de León yo estaba jugando dómino con Miguel Angel y con Ernesto Rodríguez y yo presencié desde la esquina que había una conglomeración de gente y yo dije: Qué pasará. Entonces los tres fuimos para arriba y encontramos que Francisco Rodríguez alias Celín estaba agarrado con José Alvarez, el ciego, y resulta que Miguel Pacheco intervino para poner la paz entre ellos y al intervenir estaba el padre de José Alvarez y el hermano allí, uno con una daguita como de 10 pulgadas y el otro con una cuchilla en las manos y que a no ser por Juana la India hubiese ese muchacho cortado a Miguel Pacheco. Eso es lo que yo presencié."

Y dijo el acusado:

"Acababa de almorzar y fuí para allá y me encontré con Celín y estábamos parados en un kiosko y subía el ciego con unos paquetes en la mano y había unos muchachos tirándole chupones y poniéndole nombres y el ciego venía hablando malo de los que le ponían nombres y yo compré un centavo de guineos y partí el guineo por la mitad y le di al ciego y él no lo quería coger y lo cogió y se lo comió y acabando de comerse el guineo llegó Celín, que estaba bebiendo y dijo: 'Qué pasa.' 'Tú eres uno', dijo el ciego y ahí se empuñaron y cayeron allí y entonces yo me metí a desapartarlos y yo me caí junto con ellos y entonces pude levantar al ciego y seguí con él para arriba y como yo había visto a un hermano del ciego y al padre también, yo seguí para allá y entonces cogieron al ciego y se lo llevaron al hospital. . . .—Sr. Juez: P.—¿Quién hirió al ciego?.—R.—Yo no vi.—P.—¿Usted no sabe quién hirió al ciego?—R.—No, señor."

La transcripción termina así:

"DEFENSA: Hemos terminado.—SR. JUEZ: ¿Ese es el caso?—
DEFENSA: Sí, señor.—SR. JUEZ: (Da las instrucciones al Ju-
rado.)—(Después de retirarse el Jurado a deliberar.) ¿Se so-
mete el caso de Portar Armas por la misma prueba?—DEFENSA:
Sí, señor.—SR. JUEZ: La corte resolverá.—DEFENSA: Ibamos a pre-
sentar una moción de *nonsuit* en cuanto al caso de Portar Armas,
porque no se ha establecido que el acusado portara una de las armas
que especifica la ley y vamos a pedir el archivo y sobreseimiento del
caso de portar armas por falta de prueba.—SR. JUEZ: La corte re-
solverá después del veredicto del Jurado.—SR. JUEZ: (Después de
leído el veredicto en el caso de Atentado a la Vida.) En cuanto
al delito de portar armas, la corte por la apreciación de la prueba,
declara convicto y culpable al acusado Miguel Pacheco de un delito
de portar armas prohibidas y lo sentencia a cumplir dos (2) meses
de cárcel."

A nuestro juicio surge claramente de la evidencia que
dejamos resumida que el acusado portaba un arma capaz
de inferir daño corporal, que es lo que exige la ley. Sec.
1, ley núm. 14, 1924, pág. 115; Código Penal, ed. 1937, pág.
407. ¿Era un cuchillo como especifica la acusación?

"Punzón, puñal o arma blanca de poca hoja" deduce el
facultativo que era a virtud de las heridas que produjo; el
acusado "tenía el cuchillo en la mano", dice el herido, y
luego, que le tiró "con el puñal", que más tarde llama
"púa"; "lo cortó" manifiesta Claudina Alvarez, y Pablo
Batista, "salió con heridas"; a Angela Nieves, que vió
cuando el acusado "brincó y cortó" al ciego, no se le per-
mitió que dedujera con "un cuchillo tendría que ser"; Ro-
berto Díaz testifica sobre el hecho de las heridas pero no
vió el arma y Juan Cintrón que había declarado que el
acusado tenía una cuchilla en las manos, al pedirle la defensa
que precisara si era cuchillo o cuchilla, contesta, "Cuchillo
o cuchilla, es igual."

Diferencias existen en verdad entre un cuchillo, una
cuchilla, un puñal y un punzón, y no puede negarse que la
evidencia practicada se presta a interpretaciones varias.

Sin embargo, como es robusta y convincente en el sentido de que el acusado portaba un arma blanca prohibida, por débil que sea en cuanto a que esa arma blanca fuera un cuchillo, puede y debe considerarse suficiente. La teoría de la defensa no consistió en que el arma con que la herida se causara no fuera de las que la ley prohibe; consistió en que el acusado no portaba arma alguna, siendo su única intervención en el suceso la de poner la paz entre las partes contendientes.

La sentencia no es, pues, contraria a derecho y está sostenida por la prueba. No se cometió el primero de los señalamientos de error.

Tampoco se cometió el segundo porque el juez no estaba obligado por el veredicto absolutorio del jurado en el caso de *felony,* sino por la propia apreciación que hiciera de la prueba.

"El hecho de que el acusado ha sido absuelto del delito de atentado a la vida, en nada puede afectar la conclusión a que llegara el juez en su apreciación de la prueba respecto al de portar armas", dijo esta corte recientemente en *Pueblo* v. *Correa,* 59 D.P.R. 262, 263.

Y tampoco fué cometido el tercero y último de los señalamientos de error. A él refiriéndose dice en su alegato el apelante:

"Al resolver el jurado absolviendo al acusado del delito de atentado a la vida, la corte mostró un manifiesto grado de contrariedad y procedió inmediatamente, sin considerar la moción de *nonsuit* presentada por la defensa en cuanto al caso de portar armas (página 39 *Transcript*), a dictar sentencia condenando al acusado a cumplir dos meses de cárcel por dicho delito; mostrando el juez sentenciador un profundo desagrado e inquietud mental así como una pasión manifiesta contra el acusado."

Nada consta de los autos con respecto al "profundo desagrado e inquietud mental" del juez sentenciador, ni sobre su "manifiesta pasión en contra del acusado." Lo que

surge es su desacuerdo con el Jurado, plenamente justificado por el examen de la prueba.

Si algo trascendió quizá del alma al rostro del juez sentenciador con motivo del veredicto absolutorio del Jurado, fué seguramente la inevitable reacción de una conciencia honrada frente a la consumación de una injusticia notoria. Y ello jamás podría servir de base para la revocación de una sentencia basada en los hechos y en la ley.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Todd, Jr., no intervino.